In the

# United States Court of Appeals

### For the Seventh Circuit

---

No. 05-4286

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAKEFFE HOLT,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 840—**James B. Moran**, *Judge.*

---

ARGUED NOVEMBER 8, 2006—DECIDED MAY 15, 2007

---

Before CUDAHY, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Jakeffe Holt was convicted of possession of a firearm by a felon pursuant to 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(e), and is serving a sentence of 200 months' imprisonment. Holt argues that: (1) the district court should have granted him a new trial after excluding cross-examination of police officers regarding complaints and reprimands against them under Federal Rule of Evidence 608(b); (2) he was denied due process of law when the prosecution did not call certain witnesses or offer evidence that an individual had changed her story; and (3) the district court did not make independent findings of fact or sufficiently explain its reasons under 18 U.S.C. § 3553(a) for imposing a

sentence of 200 months' imprisonment. Finding no error below, we affirm.

## I. BACKGROUND

On the night of July 12, 2004, Chicago Police Officers Michael Connolly and Brendan Corcoran received a radio broadcast directing them to the LeClaire Courts housing project in Chicago, Illinois. They responded in uniform and in a marked squad car. The officers spoke to a woman and based upon that conversation they drove to the 4900 block of West 44th Place. There, the officers saw Holt pushing another man in a wheelchair, and Officer Connolly exited the squad car and headed in Holt's direction. Holt looked at Connolly, removed a gun from his waistband, and fled on foot.

The gun was a laser-sighted blue-steel pistol, and as Officer Connolly chased Holt on foot, he observed the red dot from the laser-sight moving along the ground next to Holt. Officer Corcoran followed in the squad car, and Officer William Seski arrived and chased on foot behind Connolly. All of the officers observed the gun in Holt's right hand, and the red dot from the laser sight. As Officer Connolly was closing in, Holt turned to face him and raised the gun so that the laser-sight was pointed at Connolly's chest. Officer Connolly was within a matter of feet from Holt at this time, and was running full speed. He crashed into Holt, and Officers Seski and Corcoran, who by now had exited his squad car, came to his aid. The officers subdued Holt on the ground, and Officers Corcoran and Seski handcuffed Holt after Officer Connolly recovered the weapon. Officer Seski's partner, Officer Jaime Rodriguez, arrived during the struggle and observed the other officers subdue Holt and Officer Connolly recover the weapon. The pistol was never fired.

Officer Connolly disarmed the weapon, which was fully loaded with nine live rounds, one of which was in the chamber. Holt was Mirandized and transported to a nearby police station. He was placed in a room where he was handcuffed to a bench and the officers completed paperwork nearby. Without questioning or provocation, Holt stated to Officer Connolly: "I should have killed your pussy ass. I could have too. I should've shot you in the face." Other officers in the room heard this statement, and Officer Connolly recorded the statement in his report.

Holt was retried after a mistrial resulting from a hung jury. At the second trial, Officers Connolly, Corcoran, Seski and Rodriguez testified for the government. Additionally, Jane Michalik, an evidence technician employed by the Chicago Police Department, testified that fingerprints could not be recovered from the gun or magazine and explained why that might be the case. Defense counsel attempted to enter the contents of the 911 call from the complaining witness, Kimberly Nash. Nash had changed her story since the time of the original incident, and neither the prosecution nor the defense had called her as a witness. The district court excluded the contents of the call as inadmissible hearsay.

Defense counsel also attempted to cross-examine Officers Connolly and Corcoran regarding complaints filed against them and reprimands or other consequences resulting from such complaints. The district court allowed defense counsel to question the officers about the underlying conduct alleged in the complaints, but did not allow questioning regarding complaints or punishment, determining that such questioning was not permissible under Federal Rule of Evidence 608(b) and additionally that it would evoke hearsay. The defense called a witness who testified that she saw the police hit Holt with a squad car, and that Holt did not have a gun at the time. In rebuttal, a physician who treated Holt that night testified for the

government that Holt had no injuries consistent with being hit by a car, and that he had not complained of such an incident.

The jury convicted Holt, and the district court sentenced him to 200 months' imprisonment, which was sixty-two months below the advisory Sentencing Guidelines range. Holt's Guideline range was 262-327 months based on an Offense Level of 34 and a Criminal History Category of VI. The district court classified Holt as an armed career criminal under 18 U.S.C. § 924(e)(1), based partly upon a prior conviction for a commercial burglary which qualified as a "violent felony." When asked if he had anything to say that might help the judge make his sentencing decision, Holt only explained that, in his view, he had been denied justice. The district court explained its sentencing decision, stating that it "believe[d] that it happened the way that the government's witnesses testified it happened." Tr. Oct. 28, 2005, p. 35. The court also noted Holt's extensive criminal record before imposing a below-guidelines sentence, explaining: "By the time you get out, you're going to be passed [sic] the age when people, generally speaking, are involved in violent crimes. Hopefully in the interim you're going to refocus on what you want to do when you get out of prison, because you will be approaching about middle age, and change things around, because you sure need to." *Id.*

## II. ANALYSIS

Holt raises three issues on appeal: (1) whether he was improperly denied a new trial after the district court prohibited defense counsel from cross-examining officers concerning reprimands or punishments imposed by their employers; (2) whether he was denied due process of law by the government's failure to call certain witnesses or present evidence that one individual had changed her

story; and (3) whether the district court made sufficient findings of fact and adequately explained its reasons for the sentence imposed under 18 U.S.C. § 3553(a).

### A. Prior Conduct Under Federal Rule of Evidence 608(b)

Holt contends that the district court should have granted him a new trial based on its alleged error under FED. R. EVID. 608(b) in prohibiting cross-examination of officers concerning prior discipline they had received. We review the district court's decision to limit the scope of cross-examination for an abuse of discretion. *United States v. McClurge*, 311 F.3d 866, 873 (7th Cir. 2002). If the Sixth Amendment right to confrontation is directly implicated, however, our review is *de novo. Id.* We review the denial of a motion for a new trial for an abuse of discretion. *United States v. Childs*, 447 F.3d 541, 544 (7th Cir. 2006).

Officer Connolly received a thirty-day suspension for conduct that occurred in 2001 that did not involve Holt or anyone else involved in this case. Based upon an unrelated complaint, Officers Connolly and Corcoran were also both reprimanded for neglect of duty. The government moved to exclude all evidence and questioning regarding the police department's investigation, findings, and discipline of the officer witnesses. In response to a motion in limine, the district court ruled that on cross-examination, defense counsel could inquire into the underlying conduct that led to the discipline but could not ask questions about complaints, investigations or discipline, and that no extrinsic evidence would be heard on the matter. At trial, the district court sustained the government's objection to such questioning.

Federal Rule of Evidence 404 excludes character evidence as a general matter. Rule 608 deals more particularly with evidence of a witness's character or conduct.

Attacking a witness's character for truthfulness through opinion or reputation testimony is allowed by Rule 608(a). *See Beard v. Mitchell*, 604 F.2d 485, 503 (7th Cir. 1979). Thus, in this case, Holt could have put forth witnesses who would testify either that in their personal opinions Officers Connolly and Corcoran are not truthful people, or that the officers have a reputation for untruthfulness. The use of specific instances of conduct to show a witness's character for truthfulness is governed by Rule 608(b), which states: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness . . . ." FED. R. EVID. 608(b); *see United States v. McGee*, 408 F.3d 966, 981-83 (7th Cir. 2005); *United States v. Wilson*, 985 F.2d 348, 351-52 (7th Cir. 1993).

Under Rule 608(b), the district court properly allowed Holt's counsel to ask Officer Connolly whether he had ever engaged in a particular course of conduct. The record does not indicate whether Holt attempted to offer any reports proving that Officer Connolly had been suspended, but Rule 608(b) would obviously exclude such extrinsic evidence in order to prove Connolly's character for truthfulness. What we are now concerned with lies in between: whether the district court could prohibit Holt's counsel from asking Connolly on cross-examination if he had been suspended for his conduct.

To resolve this issue, the district court turned to the Advisory Committee Notes to Rule 608(b): "[T]he extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act. For example, Rule 608(b) prohibits counsel from mentioning that a witness was

suspended or disciplined for the conduct that is the subject of impeachment, when that conduct is offered only to prove the character of the witness." FED. R. EVID. 608(b) advisory note to 2003 Amendments (citing *United States v. Davis*, 183 F.3d 231, 257 n.12 (3d Cir. 1999)). This language, however, appears to be in tension with our recent opinion in *United States v. Dawson*, 434 F.3d 956 (7th Cir. 2006). In *Dawson*, we focused on the scope of Rule 608(b), noting that it only prohibits the use of extrinsic evidence, not lines of questioning. *Id.* at 958; *see also United States v. Redditt*, 381 F.3d 597, 602 (7th Cir. 2004). The exclusion of extrinsic evidence does not mandate the prohibition of questions regarding the punishment imposed on a witness for a given course of conduct. *Dawson*, 434 F.3d at 958.[1]

However, we further explained in *Dawson* that "[t]his is not to suggest that every question a lawyer might want to ask about a third party's opinion of the credibility of a witness would be proper cross-examination. . . . The trial judge has a responsibility not to allow cross-examination to get out of hand, confuse the jury, and prolong the trial unnecessarily. . . . The important point is that the decision whether to allow a witness to be cross-examined about a judicial determination [in that case] finding him not to be credible is confided to the discretion of the trial judge . . . ." *Id.* at 958. Rule 608(b) leaves the trial judge with broad discretion to limit such questioning, stating only that prior instances of conduct "may" be inquired of "in the discretion of the court, if probative of truthfulness

---

[1] We questioned in *Dawson* whether our conclusion that third-party credibility determinations may be inquired of on cross-examination under Rule 608(b) was dependent upon the facts of that case, wherein the third-party was a judge and the determination was part of official court proceedings. *Dawson*, 434 F.3d at 958.

or untruthfulness." FED. R. EVID. 608(b); *see United States v. Seymour*, 472 F.3d 969, 971 (7th Cir. 2007); *United States v. Werbrouck*, 589 F.2d 273, 278 (7th Cir. 1978).

In this case, as to Officer Connolly's prior suspension, the district court thought questioning was limited not only by Rule 608, but also because such questioning would interject hearsay into the proceedings. That is, asking Officer Connolly whether the police department had punished him would introduce the opinion of members of the police department. If Holt wanted to use the opinions of members of the police department to undermine Officer Connolly's credibility, he could have used Rule 608(a) and called a member of the department to testify directly about his opinion or the reputation of Officer Connolly. *United States v. Tedder*, 403 F.3d 836, 839 (7th Cir. 2005). Holt did not do so, and it was within the district court's discretion to exclude this line of questioning. As to Officers Connolly and Corcoran's former reprimands for neglect of duty, the district court simply found that this evidence was not even relevant under Rules 401 and 402 because it did not bear on their characters for truthfulness. *See Seymour*, 472 F.3d at 971. The district court did not abuse its discretion in excluding either lines of questioning.

## B.  *Government Witnesses and Due Process*

Holt next argues that the government's failure to introduce evidence of the complaining witness's inconsistent statements and Officers Connolly and Corcoran's alleged prior misconduct was so fundamentally unfair as to deny Holt due process of law.

The officers had been directed to the LeClaire Courts housing project as a result of a 911 call placed by Kimberly Nash reporting that a man had pulled a gun on her

daughter. Nash subsequently changed her story and claimed that she had not seen the gun. Some of Nash's conflicting statements were admitted into evidence in Holt's first trial because the government offered the contents of the 911 call into evidence to give the officers' actions context. Believing that this evidence confused the jury in the first trial, the government decided not to enter the contents of the 911 tapes in the second trial, and Nash's statements, which were never offered for the truth of the matter asserted, were thus excluded in the second trial. Holt did not attempt to call Nash as a witness.[2]

*Brady v. Maryland* requires prosecutors to disclose material exculpatory statements to defendants. 373 U.S. 83 (1963). Holt cites *Napue v. Illinois* in support of his argument that the prosecutors in this case were required not only to disclose such evidence (as they did), but also to present such evidence at trial. 360 U.S. 264 (1959). *Napue* stands for the proposition that prosecutors may not suborn perjury, not that prosecutors must present evidence exculpatory to a defendant in their case-in-chief. *Id.* at 270. Our legal system remains an adversary one, and prosecutors are not required to make a defendant's case for him. We note that *Napue* predates *Brady*, and if the Supreme Court wished to impose such a broad obligation on criminal prosecutors, they could have done so at that time. The government's failure to offer the conflicting statements of Nash and the disciplinary records of the police officers involved did not deny Holt due process of law.

---

[2] Holt's due process argument appears to be an ineffective assistance of counsel argument in disguise. We note, however, that he has preserved that argument for collateral review.

*C. Sentencing*

Holt's final argument is that the district court did not adequately consider the sentencing factors in 18 U.S.C. § 3553(a) or make sufficient findings of fact to allow meaningful review by this court. He also seems to confuse this issue with that of proper calculation of the advisory sentencing guidelines range. As Holt has not pointed to any particular claimed error in the calculation of either his offense level or his criminal history category, we limit our review to the application of the § 3553(a) factors.

The district court determined that Holt had an Offense Level of thirty-four and a Criminal History Category of VI. This yielded a guideline range of 262 to 327 months. Holt's sentence was also subject to a mandatory minimum term of 180 months. 18 U.S.C. § 924(e). The district court stated: "Mr. Holt, you can tell me anything you wish that you think would be helpful to me in the decision I have to make." Tr. Oct. 28, 2005, p. 34. Holt replied only with general statements of injustice and reiterated the perceived unfairness of excluding Officer Connolly's disciplinary record. *Id.*

The district court sentenced Holt to 200 months' imprisonment—sixty-two months below the guidelines range. The district court explained its sentence, stating: "I heard the evidence at the trial, and I did believe that it happened the way that the government's witnesses testified it happened." *Id.* at p. 35. The court noted Holt's extensive criminal record and explained that the only reason it was giving him a below-guidelines sentence was because of his age. The court reasoned that by the time Holt is released he will have "passed the age when people, generally speaking, are involved in violent crimes." *Id.* The court concluded: "Hopefully in the interim you're going to refocus on what you want to do when you get out of prison, because you will be approaching about middle age, and change things around, because you sure need to." *Id.*

Post-*Booker* a district court must engage in a two-part sentencing procedure: (1) properly calculate the guidelines sentence; and (2) consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to arrive at a reasonable sentence. *United States v. Dean*, 414 F.3d 725, 727 (7th Cir. 2005). Holt's argument concerns the second part of this procedure. The district court must give the defendant "an opportunity to draw the judge's attention to any factor listed in section 3553(a) that might warrant a sentence different from the guidelines sentence." *United States v. Wallace*, 458 F.3d 606, 609 (7th Cir. 2006) (quoting *Dean*, 414 F.3d at 730). Application of § 3553(a) is mandatory, but this does not require the sentencing court to pick apart the factors in minute detail—particularly where, as here, the defendant has given the court scant mitigating evidence to work with. *Wallace*, 458 F.3d at 609; *United States v. Cunningham*, 429 F.3d 673, 678-79 (7th Cir. 2005); *Dean*, 414 F.3d at 729; *see United States v. Booker*, 543 U.S. 220, 259-60 (2005). If the district court departs from the guidelines range, it must explain its reasons; and, the farther it departs, the more compelling its justification must be. *Dean*, 414 F.3d at 729. However, explicit findings of fact are required only if contested facts are material to the judge's decision. *Id.* at 730 (citing *United States v. Ahmad*, 2 F.3d 245, 247 (7th Cir. 1993)).

We are satisfied that the district court has met all of its obligations in imposing Holt's sentence. The only mitigating factor that the court could find was Holt's age, which diminished the need to deter Holt from future crimes. The court found this persuasive enough to impose a sentence sixty-two months below the guidelines range, and only twenty months above the statutory minimum, despite the strength of the government's case and Holt's extensive criminal background. It is hard to imagine how much more generous the district court could have been.

The district court adequately explained its consideration of the § 3553(a) factors to withstand Holt's challenge.

### III.  CONCLUSION

For the forgoing reasons, the conviction and sentence of Jakeffe Holt are AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*