In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-1264

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

JOHNEAK JOHNSON,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cr-832-1 — **Sharon Johnson Coleman**, *Judge.*

ARGUED NOVEMBER 30, 2023 — DECIDED JANUARY 5, 2024

Before HAMILTON, KIRSCH, and PRYOR, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant-appellee Johneak
Johnson has been indicted for violating 18 U.S.C. § 922(g)(1)
by possessing a firearm as a person previously convicted of a
felony. He awaits trial. To challenge a pretrial ruling exclud-
ing evidence from trial, the government has brought this in-
terlocutory appeal under 18 U.S.C. § 3731. Relying on Federal
Rule of Evidence 403, the district court decided before trial to
exclude evidence that the firearm in question had an attached

laser sight and that two key witnesses saw the sight activated when defendant possessed (and brandished) the firearm. The district court found that any evidence regarding the laser sight would cause unfair prejudice to the defendant that would substantially outweigh its probative value.

The government proposed to limit the laser sight evidence to reduce any risk of unfair prejudice. The government's final proposal was to have its witnesses describe the firearm only as having a "glowing red dot," without naming the laser sight or physically demonstrating that feature of the firearm. The district court found that the risk of unfair prejudice from even this limited evidence of the laser sight would still substantially outweigh its probative value. The court stood by its decision to exclude all evidence of the laser sight under Rule 403.

We apply a deferential abuse-of-discretion standard of review to a district court's decision to admit or exclude evidence under Rule 403. District judges are more familiar with their cases and are generally in the better position to gauge both probative value and risk of unfair prejudice. Nevertheless, and with respect for our colleague on the district court, this is one of those rare cases where reversal is warranted. The issue here is broader than this case—the government's ability to offer evidence identifying a weapon the accused is charged with possessing unlawfully, even if that identifying evidence tends to show the weapon is particularly dangerous. With slight variations, this issue can arise in many cases.

In our view, the district court both understated the probative value of the identifying laser sight evidence and overstated the risk of unfair prejudice to the defendant. At a minimum, the government's final proposal, set forth in its motion for reconsideration, should be sufficient to avoid

unfair prejudice to the defendant. Upon remand, the government is entitled to carry out its final proposal to the district court—primarily that its witnesses describe the laser sight only as a "glowing red dot" on the handgun—accompanied by an appropriate limiting instruction.

I.  *Evidence of the Charged Offense*

We do not intend to imply any views about the ultimate merits of the charge against Johnson, but audio and video recordings allow us to describe some events with confidence even before trial. On the morning of April 28, 2019, Caziah Walton called 911 to report a violent domestic dispute between her mother, Naomi Thompkins, and defendant Johnson at Thompkins' Chicago home. Walton told the 911 operator, "my mother's boyfriend is trying to put his hands on her and she keeps asking him to leave and he's refusing to leave."

Eight minutes later, Walton made a second 911 call. She told the operator, "My mom's boyfriend just pulled out a gun on her." Walton described the gun to the 911 operator as "black" with "a red dot glowing on it." Walton also told the operator that the defendant had moved from the house to his car. She described the defendant and the car.

Four Chicago police officers arrived at Thompkins' home approximately six minutes later. Dispatch had told them of a domestic dispute at the location after Walton's first 911 call. After the second call, dispatch updated the officers that "the mom's boyfriend pulled a gun on her. He's standing near his silver Impala, male black, dreads, green hoodie, black hat, blue jeans, black shoes." The officers immediately saw a man matching that description, later identified as defendant Johnson. As the officers approached, they saw him put something

into the open rear passenger door of a Nissan Infiniti. Johnson then walked toward the sidewalk in front of Thompkins' home.

The officers got out of their patrol cars and stopped Johnson. At the same time, Thompkins came outside, stood on her front porch, and warned the officers that Johnson had a gun on him. The officers frisked Johnson but found no firearm. After the frisk, the officers handcuffed him.

Thompkins walked down from her front porch to the parked Infiniti. She opened the rear passenger door and called out to the officers that she had found the gun, saying, "here you go, right here." An officer told Thompkins not to touch the gun. She responded, "I ain't gonna touch it. Ask my kids, he pulled it out on me and my kids." The officer then asked Thompkins where the gun was located. She responded, "it's right there on the seat."

The officer told Thompkins to return to her front porch. Other officers secured Johnson in a police car. The officer then briefly looked into the open door of the Infiniti before walking to his police car for a moment. When the officer then immediately returned to the open door of the Infiniti, Thompkins said to him, "See it? Below that jacket right there." The officer lifted two articles of clothing from the back seat, revealing a gun.

Thompkins approached the officer at the Infiniti again to point at the gun and said "right there. Right there." The officer again told Thompkins to stay away from the car. The officer showed one of his colleagues where the gun was. That second officer put on a pair of gloves and retrieved the gun. The gun was equipped with a laser sight that glowed red when

activated by applying pressure to a pad on the gun's grip. Johnson was immediately arrested.

II. *District Court Proceedings*

   A. *September 9, 2022 Pretrial Conference: Domestic Dispute Evidence*

A federal grand jury indicted Johnson for possessing a firearm following a felony conviction in violation of 18 U.S.C. § 922(g)(1). The district court held a pretrial conference on September 9, 2022. During the conference, the court decided to exclude any evidence of the domestic dispute between defendant Johnson and Thompkins. The court reasoned that such evidence would be unfairly prejudicial to the accused because the federal charge was being a felon in possession, not armed domestic assault. Specifically, the court said it would exclude Walton's first 911 call and any related testimony. The court also instructed the government that its witnesses could refer to the interactions between Thompkins and defendant Johnson before he allegedly brandished the firearm only as an "argument." The court said it would allow evidence of Walton's second 911 call—when she reported the gun with the red dot on it. The court also told counsel to work together to draft a limiting instruction telling the jury not to give any weight to the domestic dispute.

   B. *January 12, 2023 Pretrial Conference: Laser Sight Evidence*

On January 12, 2023, the district court held another pretrial conference and addressed evidence of the laser sight. The government told the court that it intended to present testimony regarding the firearm's laser sight and to have an ATF agent demonstrate the feature at trial. The court expressed concern that evidence of the laser sight would be unfairly

prejudicial because it would cause the jury to think of the case as a trial for attempted murder rather than for being a felon in possession. At the court's invitation, the defense filed a motion *in limine* explaining its objection to the laser sight evidence.

C. *January 26, 2023 Pretrial Conference: Laser Sight Evidence*

The district court held another pretrial conference on January 26, 2023, with extensive argument on the laser sight evidence. The court said it was not likely to permit a demonstration of the laser sight feature. The court also said it was leaning toward admitting the mention of a "glowing red dot" in Walton's second 911 call, as well as allowing Walton to testify to that specific description of the gun, but the court took the issue under further advisement.

D. *District Court Order Excluding Laser Sight Evidence*

The next week, the district court issued an order excluding all evidence of the laser sight. The court began by acknowledging that the laser sight had some probative value because it could corroborate the testimony of Walton and Thompkins. But the court then explained that "any reference to a 'red dot,' or to laser sights more generally" would be excluded under Rule 403 because "admitting inflammatory evidence or testimony in this case will invariably lead down a slippery slope where the parties discuss the underlying domestic dispute—one for which Johnson was not charged." The court wrote further that "even a limited discussion of the laser sight exacerbates the Court's concern that a juror may decide the case based on their perception as to whether Johnson was extremely dangerous, instead [of] on whether

the government proved, beyond a reasonable doubt, that he unlawfully possessed a gun as a felon."

E. *Motion for Reconsideration*

The government moved to reconsider. The motion proposed to limit the laser sight evidence further, so that none of its witnesses would describe seeing a red dot pointed at them or on anyone's clothing (indicating that the gun was aimed at them). They would instead say only that they saw a glowing red dot on the gun. The government also offered to limit the ATF agent's testimony so that he would not describe the feature as a laser sight. Instead, he would use a photograph to explain how the feature functions so that the jury could see the weapon as it appeared to the government's witnesses at the time they claim Johnson possessed it.

The government argued that the laser sight evidence would be highly probative. It would help prove the central disputed element in the case—the defendant's possession of the firearm with that distinctive feature. The evidence would also help corroborate the testimony of its eyewitnesses. This would be vital, the government argued, because the defense had signaled that it would suggest that Walton and Thompkins had fabricated their testimony and that Thompkins herself had planted the gun in the defendant's car.

The district court denied the government's motion for reconsideration, finding that even the more limited laser sight evidence the government proposed would risk unfair prejudice to the accused. The government appealed.

III. *Standard of Review*

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by

a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In criminal cases, this determination is made against the backdrop of the general presumption that the prosecution is entitled to tell "a colorful story with descriptive richness" and "evidentiary depth." *Old Chief v. United States*, 519 U.S. 172, 187–90 (1997). The rule gives the district court discretion in the first instance, and appellate courts review Rule 403 decisions for abuse of discretion. E.g., *United States v. Chanu*, 40 F.4th 528, 544 (7th Cir. 2022). The question is not whether we would make the same decision as the district court. When we review the context-sensitive application of Rule 403, "'we give special deference' to the district court's findings and reverse only when 'no reasonable person could take the view adopted by the trial court.'" *United States v. LeShore*, 543 F.3d 935, 939 (7th Cir. 2008), quoting *United States v. Cash*, 394 F.3d 560, 564 (7th Cir. 2005).

Abuse of discretion is a high standard but not an insurmountable one. The Supreme Court reversed a Rule 403 finding in *Old Chief v. United States*, also a felon-in-possession prosecution. 519 U.S. at 191–92. Or compare appellate review of Rule 403 decisions to review of grants and denials of preliminary injunctions, which are also subject to abuse-of-discretion review. Reversals of Rule 403 exclusions are rarer than preliminary injunction reversals, but they are not unknown. From this circuit's decisions, see *Thompson v. City of Chicago*, 722 F.3d 963, 976 (7th Cir. 2013) (abuse of discretion to exclude guilty-plea testimony of non-party officers to corruption charges; risk that evidence would cause jury to decide case on an improper basis—the outrageous conduct of other officers—did not substantially outweigh its probative

value); *Cerabio LLC v. Wright Medical Technology, Inc.*, 410 F.3d 981, 994 (7th Cir. 2005) (abuse of discretion to exclude all evidence from before the parties entered into agreement that formed basis of contract dispute when some excluded evidence was central to case); *Mihailovich v. Laatsch*, 359 F.3d 892, 910–13 (7th Cir. 2004) (abuse of discretion to exclude all evidence of prior car accidents at same allegedly dangerous curve in road); *United States v. Centracchio*, 265 F.3d 518, 530–32 (7th Cir. 2001) (abuse of discretion to exclude statements of a deceased co-conspirator), abrogated on other grounds by *Crawford v. Washington*, 541 U.S. 36 (2004); *United States v. Messino*, 181 F.3d 826, 830–31 (7th Cir. 1999) (abuse of discretion to exclude testimony of defendants' co-conspirator despite attorney conflict of interest); *Buscaglia v. United States*, 25 F.3d 530, 533–34 (7th Cir. 1994) (clear error to exclude expert witness affidavit; court erred by discounting probative value of affidavit while significantly overstating risk of unfair prejudice and confusion from admission).[1]

---

[1] This circuit is not alone in reversing Rule 403 exclusions in appropriate cases, though such reversals are relatively rare. See, e.g., *United States v. Soler-Montalvo*, 44 F.4th 1, 18–19 (1st Cir. 2022) (abuse of discretion to exclude defense expert's testimony on how defendant's behavior differed from a typical sexual predator); *United States v. Pepin*, 514 F.3d 193, 207–09 (2d Cir. 2008) (abuse of discretion to exclude from guilt phase of capital trial prosecution's evidence that murder victims had been dismembered); *Herber v. Johns-Manville Corp.*, 785 F.2d 79, 83 (3d Cir. 1986) (abuse of discretion to exclude evidence of increased future risk of cancer on theory that "mere mention of that dread disease" would unfairly prejudice defendant); *United States v. Bajoghli*, 785 F.3d 957, 966 (4th Cir. 2015) (abuse of discretion to exclude post-scheme conduct showing guilty mind); *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1155 (5th Cir. Unit A Sept. 1981) (abuse of discretion to exclude results of blood alcohol test); *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 360 (6th Cir. 1997) (abuse of discretion to

IV. *Analysis*

In our analysis, we focus on the most limited version of the laser sight evidence proposed by the government in its motion for reconsideration. The government sought to introduce laser sight evidence in the following manner:

1. Testimony by Thompkins and Walton that each saw a "glowing red dot" or "red dot" on the defendant's gun as he brandished it;

2. The recording of Walton's second 911 call without redacting her description of the gun as having a "red dot glowing on it;" and

3. Testimony by an ATF agent explaining that the gun found in defendant's car had a feature that would appear as a "red glowing dot" when pressure was applied to the pressure pad located beneath the gun's trigger

---

exclude taped interviews showing pastor told defendant of non-public facts about murder before defendant confessed and included those details); *American Modern Home Ins. Co. v. Thomas*, 993 F.3d 1068, 1071–72 (8th Cir. 2021) (abuse of discretion to exclude three prior convictions when witness credibility was paramount); *Obrey v. Johnson*, 400 F.3d 691, 697–99 (9th Cir. 2005) (abuse of discretion to exclude anecdotal evidence of past discrimination); *Dugan v. EMS Helicopters, Inc.*, 915 F.2d 1428, 1435 (10th Cir. 1990) (abuse of discretion to bar use of pleadings from another case containing prior inconsistent statements); *Busby v. City of Orlando*, 931 F.2d 764, 783–84 (11th Cir. 1991) (abuse of discretion to exclude chart showing number of employees fired each year by race); *Henderson v. George Washington Univ.*, 449 F.3d 127, 135–36, 141 (D.C. Cir. 2006) (abuse of discretion to exclude post-surgery report for a different patient in medical malpractice suit).

> guard, along with a photograph of the fea-
> ture rather than a demonstration.[2]

In denying the motion for reconsideration, the district court explained that while the proffered evidence was probative, it was not "central" to the government's case. The court reasoned that the government had ample other evidence to prove possession and that the laser sight evidence would be so highly prejudicial that it could not be mitigated by the government's proposed limits. The court based its finding of prejudice on several factors, including: (1) the current environment of frequent mass shootings in the United States; (2) the laser sight served no purpose other than to make the gun more dangerous by increasing its accuracy; and (3) the likelihood that the evidence would turn a simple possession case

---

[2] The government also proposed a limiting jury instruction that would say:

> You have heard testimony regarding a feature of the firearm allegedly possessed by defendant that makes a glowing red dot appear on the firearm when pressure is applied to the pressure pad located beneath the firearm's trigger guard. This feature is not illegal, and it does not make a gun any more dangerous than a gun without this feature.

We agree with the district judge that a laser sight probably tends to make a gun more dangerous, or at least makes a shooter more accurate. We also agree that instructions focusing the jury on the issue of possession are likely to be helpful, given the potential for collateral issues to distract the jury. We also recognize that some jurors might infer that the "red dot" on the gun is a laser sight. Given these considerations, we leave the framing of appropriate limiting instructions to the sound judgment of the district court on remand.

into one where the jury viewed the defendant as "an assassin preying on women and children."

Reversal is warranted on two grounds. First, the district court unduly discounted the probative value of the laser sight evidence. It is central to a contested element of the offense—possession—including the credibility of the government's eyewitnesses on the issue of possession. Second, the district court gave undue weight to the risk of unfair prejudice if the government is held to its proposed limited version of the laser sight evidence. Based on considerably greater probative value and less risk of unfair prejudice than the district court recognized, the Rule 403 balance shifts decisively in favor of admitting the evidence. The risk of unfair prejudice clearly does not substantially outweigh the probative value.

A. *Probative Value of the Laser Sight Evidence*

1. *The Central Issue of Possession*

The district court found that the laser sight evidence would be probative but is not "central" to the government's case. We respectfully disagree. The laser sight evidence tends to prove a key disputed element of the charged crime—possession of a particular firearm. See *United States v. Kapp*, 419 F.3d 666, 677 (7th Cir. 2005) ("[I]f evidence is probative of an issue relevant to an element of the offense, it must be admitted in all but the most extreme cases."). On another Rule 403 issue in a felon-in-possession case, the Supreme Court reminded courts of "the familiar, standard rule that the prosecution is entitled to prove its case by evidence of its own choice," that "making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness," and that

the "persuasive power of the concrete and particular is often essential" for jurors to do their jobs. *Old Chief*, 519 U.S. at 186–87; accord, *id*. at 195 (O'Connor, J., dissenting) ("Although petitioner's possession of any number of weapons would have satisfied the requirements of § 922(g)(1), obviously the Government [is] entitled to prove with specific evidence that the petitioner possessed the weapon he did.").

### 2. *Probative Value*

It seems to us axiomatic that identifying features of a firearm a defendant is charged with unlawfully possessing—including evidence of an attached laser sight—are central to a felon-in-possession case. Defendant and the district court have not cited, nor have we found, cases in which evidence of any distinguishing features—even dangerous features—of the firearm in question was even controversial, let alone actually excluded under Rule 403.

Beyond this general axiom, the laser sight evidence is highly probative for two reasons specific to this case: (a) the district court's broad exclusion of other evidence has increased the probative value of the laser sight evidence; and (b) the defense intends to attack the credibility of the government witnesses, and evidence of the laser sight tends to corroborate their testimony, thereby increasing its probative value.

### a. *Limits on Other Evidence*

In finding that the laser sight evidence was not "central" for the prosecution, the district court observed that the government had "ample other evidence" to prove possession. It is true that the probative value of evidence is relative. The probative value of a single piece of evidence may decrease with

every additional piece of evidence a party introduces to prove the same point. At the same time, "the prosecution with its burden of persuasion needs evidentiary depth to tell a continuous story." *Old Chief*, 519 U.S. at 190. The prosecution is not limited to providing bare-bones proof of the elements of the crime. It is entitled to tell "a colorful story with descriptive richness." *Id.* at 187. Here, the government should not be required to sanitize its description of the firearm when the details are probative of possession. This is true even when other evidence relevant to possession is available to the government.

The district court's challenged Rule 403 exclusion bars any mention of a key identifying feature of the gun—either by the government's witnesses or in the second 911 recording. Absent the laser sight evidence, all the jury will hear from the witnesses is that they saw Johnson wielding a nondescript black gun.

Other rulings by the district court, which are not challenged on appeal, will exclude almost all mention of the events leading up to the defendant's alleged brandishing of the gun. The government's witnesses have been ordered to refer to the preceding events only as an "argument." The first 911 call was to be excluded in its entirety. The district court also ordered the second 911 call redacted to eliminate any reference to the first 911 call or the domestic dispute. This excluded evidence speaks to the defendant's possible motives for possessing and brandishing the gun, so the court's order eliminates from the government's case circumstantial evidence that is probative of possession. The court also ordered that all audio on the police officers' body-camera recordings

be muted for trial. The audio includes numerous statements by Thompkins relevant to possession.

We have previously explained that a district court may abuse its discretion when it narrows evidence so strictly that a litigant is essentially prevented from presenting his or her case. See *Thompson v. City of Chicago*, 722 F.3d 963, 971 (7th Cir. 2013) (reversing exclusion of evidence that non-party police officers pled guilty to related crimes); *Cerabio LLC v. Wright Medical Technology, Inc.*, 410 F.3d 981, 994 (7th Cir. 2005) (reversing exclusion of parties' dealings before entering into contract). Under the district court's rulings, we are concerned that "jurors may well wonder what they are being kept from knowing." *Old Chief*, 519 U.S. at 189.

Moreover, even if evidence of the laser sight is admitted, witnesses Walton and Thompkins will be under court and prosecution instructions to say less than they remember about what they experienced. Such instructions impose additional pressures on lay witnesses in an already stressful situation. After all, the witnesses ordinarily will have just taken an oath to tell "the whole truth," but there are some truths they are not allowed to mention. The instructions to limit testimony may therefore impair the witnesses' credibility and, as a consequence, the credibility of the prosecution. "People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard." *Id.*

Gaps in the government's narrative risk the jury drawing an unfair negative inference against the government. See *id.* at 188. This can be a significant risk when the government

bears the burden of persuasion beyond a reasonable doubt. The evidence probative of possession that has already been excluded serves to increase the probative value of the laser sight evidence.

### b. *Corroboration and Attacks on Credibility*

None of the police officers saw defendant hold a gun or place one in his car. The body camera videos show only that Johnson put something in his car. The government must convince the jury to infer, beyond a reasonable doubt, that this "something" was the gun. Walton's and Thompkins' testimony offers the only direct evidence that the defendant possessed a firearm. The second 911 call helps to corroborate this evidence.

Walton's and Thompkins' credibility is likely to be pivotal. Acquittal or conviction will hinge on whether the jury believes Walton and Thompkins saw Johnson possess a firearm before the police arrived and whether the firearm in question was the one found in Johnson's car. Johnson has made clear that his primary trial defense will be to attack Walton's and Thompkins' credibility, arguing that they fabricated their story and planted the gun in his car.

The defense will have grounds on which to attack their credibility, including a mistaken description of Johnson's car and a prior conviction for a crime of deception. Further, as Johnson was being arrested, Thompkins told him, "I told you not to play with me!" That statement suggests a motive and plan for revenge against him. The body camera recordings show that Thompkins walked up to Johnson's car, opened the rear door, and then announced to police that she had found a gun. We have not seen anything that conclusively refutes the

possibility that Thompkins planted the gun in defendant's car.[3]

Given the likely attacks on Walton's and Thompkins' credibility, the prosecution's desire to offer more detailed and corroborated testimony is understandable. We believe the district court substantially underestimated the probative value of the evidence of the laser sight on the charged firearm. See generally *United States v. Norweathers*, 895 F.3d 485, 491 (7th Cir. 2018) (affirming admission of extremely prejudicial evidence under Rule 403 because it was "highly probative of the issues that, at the time, appeared to be central to [defendant's] anticipated defense").

B.  *The Risk of Unfair Prejudice*

We agree with the district court that the laser sight evidence will likely cause some prejudice to the defendant, but as the judge recognized, the issue is the risk of *unfair* prejudice. See, e.g., *United States v. McKibbins*, 656 F.3d 707, 712 (7th Cir. 2011). "Evidence poses a danger of 'unfair prejudice' if it has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Rogers*, 587 F.3d 816, 822 (7th Cir. 2009), quoting Fed. R. Evid. 403 advisory committee's note.

---

[3] Our decision addresses evidence the government should be allowed to introduce in its case-in-chief. The parties, the district judge, and this court are all aware that attacks on these witnesses' credibility could easily open the door to subjects the district court hopes to avoid. These include details of the confrontation in which the witnesses say Johnson brandished the firearm, particularly the witnesses' claim that Johnson pointed the laser sight at Thompkins and her children. Regardless of the outcome of this appeal, such doors could still be opened by Johnson's trial strategy.

The district court found that even the government's limited version of the laser sight evidence could serve *only* to cause the jury to decide the case based on perceptions that the defendant is particularly dangerous. We disagree. As discussed above, the laser sight is a key identifying feature of the gun the defendant is charged with possessing. The description of any dangerous weapon may highlight the weapon's dangerousness. But it also helps to identify the weapon, which is often, as here, central to proving possession. See *United States v. West*, 53 F.4th 1104, 1108 (7th Cir. 2022) ("Depending on the nature of the offense, graphic or disturbing evidence may be central to the government's case.").

The district court overstated the risk that the laser sight evidence would cause the jury to decide the case based on perceptions about the defendant's dangerousness. First, any evidence of a firearm can be inflammatory given a firearm's innate dangerousness. Such evidence is still necessary in a felon-in-possession trial. Second, the government's proposed limits on the laser sight evidence mitigate the risk of unfair prejudice. We discuss these factors in turn.

### 1.  *Descriptions of Firearms and Risk of Unfair Prejudice*

As a general matter, evidence that risks unfair prejudice often inheres in elements of a crime or civil claim. That's why we have cautioned district courts to avoid excluding evidence under Rule 403 when the governing law requires evidence that risks inflaming the jury or may cause the jury to decide the case on an improper basis. See *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 234 (7th Cir. 2021) ("By its nature, evidence of a defendant's past violations creates a risk that the jury" will decide on improper grounds, but "it is usually necessary in *Monell* cases to introduce evidence of a prior pattern

of similar constitutional violations"); *Thompson*, 722 F.3d at 976 (danger of introducing evidence of other officers' "outrageous conduct" was "heavily discounted" because "that risk is always present in a conspiracy claim").

Evidence about a dangerous weapon is unavoidable in a felon-in-possession trial. That need does not change in an era of highly publicized mass shootings. Some types of weapons are obviously more dangerous than others. Compare a modern AR-15 semi-automatic rifle with high-capacity magazines and a laser sight and bump stock to an old six-shot, single-action revolver. Yet evidence of the type of gun allegedly possessed is regularly introduced during felon-in-possession trials. In *United States v. Perryman*, 20 F.4th 1127, 1134–36 (7th Cir. 2021), for example, the defendant was convicted of being a felon in possession of a loaded AR-15 rifle. No one would think of requiring the government to sanitize evidence of that weapon so that it would be presented as a generic, nondescript firearm.

We generally agree with the district court that a laser sight tends to make a firearm more dangerous by making it easier to aim and shoot accurately. But identifying features and modifications of firearms, including laser sights and others that make firearms more dangerous, are regularly introduced as evidence at felon-in-possession trials with little or no controversy. *United States v. Holt*, 486 F.3d 997, 999–1000 (7th Cir. 2007) (testimony describing gun with laser sight admitted in felon-in-possession trial); *United States v. Adams*, 375 F.3d 108, 110 (1st Cir. 2004) (same); *United States v. Wilburn*, 473 F.3d 742, 743 (7th Cir. 2007) (laser sight admitted in felon-in-possession trial); *United States v. Tinsley*, 62 F.4th 376, 381–82 (7th Cir. 2023) (evidence of extended magazines admitted in

felon-in-possession, bank-robbery, and drug trial); *United States v. Byers*, 603 F.3d 503, 505–06 (8th Cir. 2010) (evidence and argument about extended magazine and hollow-tipped ammunition was relevant in felon-in-possession trial; not prosecutorial misconduct to comment on them); *United States v. McCurdy*, 634 F. Supp. 2d 118, 121–22 (D. Me. 2009) (evidence of flash suppressor and collapsible stock admitted in felon-in-possession trial).[4]

### 2. *Proposed Limits to Reduce Risk of Unfair Prejudice*

In a felon-in-possession case, the identity of the charged firearm is often central to the case, as it will be here. The risk of *unfair* prejudice from describing the firearm is therefore modest, even if a description includes a dangerous feature. The description addresses the core element of possession—the basis upon which the jury should be deciding the case.

To ensure that the evidence is not relied upon for an improper purpose, we assume that the district court may have discretion to exclude evidence of threatening actions taken by the defendant. This might include here evidence that, according to the prosecution witnesses, Johnson pointed a firearm at Thompkins and her children with the laser sight activated. Cf. *United States v. Hite*, 364 F.3d 874, 878, 881–82 (7th Cir. 2004) (affirming convictions in illegal firearm possession case; district court did not abuse discretion by allowing witness to

---

[4] The opinions in these cited cases do not indicate that any defendant objected to evidence of firearm characteristics under Rule 403. We cite them on this point to indicate that evidence of firearm characteristics, even dangerous ones, seems to be admitted routinely and with little controversy. As noted, neither the defense, the district court, nor our research has found a prior case excluding under Rule 403 evidence of characteristics of a firearm that is the subject of the charged offense.

testify that defendant held charged revolver, placed one round in it, spun the barrel, and pulled the trigger to demonstrate knowing possession, but barring witness under Rule 403 from characterizing those events as "Russian roulette" or testifying that defendant pointed revolver at her), judgment vacated on other grounds, 543 U.S. 1103 (2005).

In its motion to reconsider, the government suggested limits on the evidence to reduce the risk of unfair prejudice to Johnson. Again, the government proposed to limit the evidence to identifying a glowing red dot on the gun, as opposed to describing a laser sight by name. The government also said it would not have witnesses testify that they saw a red dot on anyone's clothing, indicating that the firearm was aimed at them with the laser sight activated. These limits on the laser sight evidence should minimize any risk that it will cause the jury to view the defendant as an "assassin" or as unusually dangerous. Far from conveying any explicit or implied message that the red dot was a dangerous feature of the firearm, the limited laser sight evidence should keep the jury focused on the central issue in the case: did the defendant possess the firearm recovered from the scene—a black handgun with a glowing red dot?

Limiting the evidence to descriptions of a "glowing red dot" on the gun should ensure that any prejudice caused by the laser sight evidence is not *unfairly* prejudicial to the defendant. Compare *Holt*, 486 F.3d at 999 (allowing testimony describing gun with a laser sight in felon-in-possession trial), with *United States v. Klebig*, 600 F.3d 700, 715–16, 722 (7th Cir. 2009) (reversing conviction in unlawful firearm possession case; district court should have limited under Rule 403 a live courtroom demonstration of defendant's two dozen *legally*

possessed firearms). In our view, the district court did not adequately account for the government's proposed limits on the laser sight evidence. This led the district court to overweigh the risk of unfair prejudice in its Rule 403 analysis.

C. *Balancing*

Rule 403 requires a balance. The district court must determine whether the danger of unfair prejudice (or other problems such as confusion or wasting time) *substantially* outweighs the challenged evidence's probative value. The balancing test under Rule 403 is a "sliding scale." *United States v. West*, 53 F.4th 1104, 1108 (7th Cir. 2022). "The amount of prejudice that is acceptable varies according to the amount of probative value the evidence possesses. '[T]he more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote.'" *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012), quoting *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008), quoting in turn *United States v. Menzer*, 29 F.3d 1223, 1234 (7th Cir. 1994).

Our disagreements with the district court affect the weights assigned to both sides of the scale. The district court erred by unduly discounting the probative value of the laser sight evidence while simultaneously overstating the danger of unfair prejudice, at least with the limits the government proposed. These differences in weight are so substantial that they necessarily change the result of the Rule 403 balance and require us to reverse.

Our ruling today is intended to be narrow. First, we do not mean to imply that any of the limits the government has proposed on the laser sight evidence are essential to a fair trial in

this or similar cases. Other judges in other cases might well exercise their discretion under Rule 403 to allow such evidence of a firearm's identifying characteristics or relevant events without such limits. We hold only that the district court abused its discretion when it excluded under Rule 403 even the limited version of the laser sight evidence proposed in the government's motion for reconsideration. We also do not endorse all portions of the government's proposed limiting instruction about the gun's dangerousness. We leave the framing of appropriate limiting instructions to the district court's sound discretion.

The district court's exclusion of the limited laser sight evidence under Rule 403 as proposed in the government's motion for reconsideration is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.