**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILLIE WILLIAMS; LADON CLINE; PAUL CONTRERAS, on behalf of themselves and all others similarly situated, | Nos. 24-933 24-2970 |
| | D.C. No. 8:20-cv-01701-PSG-JDE |
| *Plaintiffs - Appellants*, | |
| v. | OPINION |
| J.B. HUNT TRANSPORT, INC., an Arkansas corporation, | |
| *Defendant - Appellee*. | |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted March 31, 2025
Pasadena, California

Filed August 12, 2025

Before: MILAN D. SMITH, JR. and LAWRENCE VANDYKE, Circuit Judges, and JANE MAGNUS-STINSON, District Judge.[*]

---

[*] The Honorable Jane Magnus-Stinson, United States District Judge for the Southern District of Indiana, sitting by designation.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[**]

### California Labor Code

The panel affirmed the district court's judgment in favor of J.B. Hunt Transport, Inc., in a wage and hour putative class action brought by former employees alleging that J.B. Hunt's compensation scheme—the Driver Pay Plan—violated the California Labor Code.

Plaintiffs, who are California-based truck drivers, alleged that J.B. Hunt violated Cal. Labor Code § 226.2 by improperly paying them on a piece-rate basis without additional compensation for nonproductive time. They also alleged J.B. Hunt committed other Labor Code violations, such as failing to reimburse them for the necessary use of their personal cell phones.

Section 226.2 implemented new rules for employees compensated on a piece-rate basis, meaning that the employee is compensated based on activities completed as opposed to total hours worked. Section 226.2 carves out an exception—known as the "safe harbor" provision—for hybrid compensation plans.

The panel held that the Driver Pay Plan qualified for the safe harbor of § 226.2(a)(7), which requires that an employer "pays an hourly rate of at least the applicable minimum wage

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

for all hours worked" in addition to paying any piece-rate compensation. That is what happened here.  J.B. Hunt paid its employees an hourly wage for "all hours," and supplemented that pay with a piece-rate-based bonus.  Accordingly, the panel held that the district court did not err by granting summary judgment to J.B. Hunt as to plaintiffs' first cause of action for unpaid wages to the extent that this cause of action was based on the purported unlawfulness of the Driver Pay Plan.

The panel held that plaintiffs had not otherwise shown a genuine dispute of material fact as to whether J.B. Hunt was otherwise liable for failing to pay plaintiffs for off-the-clock work.

The panel also held that the district court did not err by granting summary judgment in favor of J.B. Hunt on plaintiffs' Private Attorneys General Act and non-Private Attorneys General Act itemized wage statement claims.

Turning to the claims decided at trial, the panel held that the district court did not err by entering judgment in favor of J.B. Hunt on plaintiffs' claims for failure to reimburse necessary business expenses under Cal. Labor Code § 2802 and the derivative reimbursement claims under California's Unfair Competition Law and PAGA.  The district court did not abuse its discretion by improperly limiting evidence, testimony, and argument as to plaintiffs' individual claims; by excluding evidence that J.B. Hunt changed its reimbursement policy; or by failing to provide adequate jury instructions.

Finally, the panel held that the district court did not abuse its discretion by awarding costs to J.B Hunt following the district court's denial of the parties' cross-motions to retax.

**COUNSEL**

Glenn A. Danas (argued), Ashley M. Boulton, and Katelyn M. Leeviraphan, Clarkson Law Firm PC, Malibu, California; Aashish Y. Desai and Adrianne De Castro, Desai Law Firm PC, Costa Mesa, California; for Plaintiffs-Appellants.

James H. Hanson (argued) and R. Jay Taylor Jr., Scopelitis Garvin, Light Hanson & Feary PC, Indianapolis, Indiana; Jared S. Kramer, Scopelitis Garvin Light Hanson & Feary LLP, Chicago, Illinois; Christopher C. McNatt Jr., Scopelitis Garvin Light Hanson & Feary LLP, Pasadena, California; Karen B. Reisinger, J.B. Hunt Transport Inc., Lowell, Arkansas; for Defendant-Appellee.

**OPINION**

M. SMITH, Circuit Judge:

In this wage and hour case, Plaintiffs Willie Williams, LaDon Cline, and Paul Contreras, three truck drivers based in California, challenge the legality of the allegedly "convoluted" compensation scheme of their former employer, the Arkansas-based transportation and logistics company, Defendant J.B. Hunt Transport, Inc. (J.B. Hunt). Plaintiffs assert that J.B. Hunt's compensation scheme violates California Labor Code § 226.2 by improperly paying them on a piece-rate basis without additional compensation for nonproductive time. They also allege that J.B. Hunt has committed several other Labor Code violations, such as failing to reimburse them for the necessary use of their personal cell phones. In the proceedings below, the district court granted summary judgment to J.B. Hunt on most claims but allowed the claims based on necessary business expenditures to go to trial. The jury subsequently found in favor of J.B. Hunt.

Plaintiffs now appeal the district court's partial grant of summary judgment to J.B. Hunt, the final judgment at trial, and the denial of its separate motion to retax costs. We conclude that the district court did not err in granting partial summary judgment to J.B. Hunt. Nor did it abuse its discretion as to its evidentiary rulings and its formulation of the jury instructions. Finally, it did not abuse its discretion in awarding costs to J.B. Hunt. We therefore affirm.

**FACTUAL BACKGROUND**

In 2015, the California Legislature enacted California Labor Code § 226.2,[1] which implemented new rules for employees compensated on a "piece-rate basis," meaning the employee is compensated based on activities completed as opposed to total hours worked. *See* 2015 Cal. Legis. Serv. Ch. 754, § 4 (West). Section 226.2 clarified that employees paid on a "piece-rate basis" must be "compensated for rest and recovery periods and other nonproductive time separate from any piece-rate compensation," and that this other time must be compensated "at an hourly rate that is no less than the applicable minimum wage." Cal. Lab. Code § 226.2(a)(1), (4). "Nonproductive time" refers to time in which employees are at work but not performing the activities for which they receive piece-rate compensation. *See Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 812 (9th Cir. 2016). Section § 226.2 also clarified that employers who compensate on a piece-rate basis must provide employees with an itemized wage statement containing details about total hours of nonproductive time, the rate of compensation, and the gross wages paid for that time during the pay period. *Id.* § 226.2(a)(2)(B).

Notably, § 226.2 also carved out an exception—what the parties call the "'safe harbor' provision"—for hybrid compensation plans. Under § 226.2(a)(7), "[a]n employer who, in addition to paying any piece-rate compensation, pays an hourly rate of at least the applicable minimum wage for all hours worked, shall be deemed in compliance" with the statute's requirement that employers who pay only on a piece-rate basis must separately compensate for

---

[1] Unless otherwise specified, all statutory references herein are references to the California Labor Code.

nonproductive time.  *Id.* § 226.2(a)(7).  Employers whose compensation plans qualify for this safe harbor are also exempt from the statute's requirement that itemized wage statements include additional information on nonproductive time, rate of compensation, and gross wages.  *Id.* § 226.2(a)(2)(B).

In response to § 226.2, J.B. Hunt implemented new pay plans for most of its California-based drivers, including Plaintiffs, in December 2018.  Under this new plan, employees were paid on neither a pure hourly basis nor a pure piece-rate basis.  Rather, employees received hourly pay for all hours worked from the start of the day to the end of the day, including time spent on pre-route and post-route paperwork, pre-trip and post-trip inspections, fueling, and training activities.  Then, on top of hourly pay, employees were paid an "activity-based bonus amount."  Eligible activities that would be calculated into bonus pay included miles, stops, detention, and loading and unloading.  Activities such as fueling and completing paperwork were not eligible activities.  This compensation scheme—which we will call the Driver Pay Plan—can be expressed by the following formula:

Hourly Pay + Activity-Based Bonus
Amount = Total Compensation

Notably, J.B. Hunt's "activity-based bonus amount" was not simply the sum of all eligible activity pay.  Rather, J.B. Hunt calculated its "activity-based bonus amount" by subtracting hourly pay from total eligible activity pay (the raw sum of all eligible activity pay).  As J.B. Hunt explained

in its driver guidelines, the activity-based bonus amount was calculated as follows:

Total Eligible Activities – Hourly Pay = Activity-Based Bonus Amount

If the difference between total eligible activity pay and hourly pay was negative—meaning hourly pay was higher than total eligible activity pay—then J.B. Hunt simply paid the employee their hourly pay and no additional bonus for that pay period. In such circumstances, the formula would simply become the standard Hourly Pay = Total Compensation.

It is the application of this compensation scheme to Plaintiffs—and J.B. Hunt's alleged violation of § 226.2 in doing so—that forms the heart of Plaintiffs' case and the bulk of the dispute between the parties. However, as detailed below, Plaintiffs also challenge a variety of J.B. Hunt's other practices, such as failing to pay for off-the-clock work and failing to reimburse for personal cell phone use, which are also before us on appeal.

## PROCEDURAL BACKGROUND

Plaintiffs are three California-based truck drivers who were employed by J.B. Hunt beginning in 2019. In July 2020, they filed a putative class action against J.B. Hunt in the Superior Court of California, alleging failure to pay all wages for non-driving time in violation of §§ 1194, 1196, and 226.2; failure to provide meal breaks in violation of §§ 226.7, 512, and 558; failure to provide rest breaks in violation of § 226.7; failure to indemnify for all necessary expenditures in violation of § 2802; failure to issue accurate itemized wage statements in violation of §§ 226(a), 226(b),

and 226(e); late pay and waiting time penalties in violation of §§ 200–03; and unlawful and/or unfair business practices in violation of California's Unfair Competition Law (UCL). J.B. Hunt later removed the case to federal court.

In October 2020, Plaintiffs filed an amended complaint, adding an eighth cause of action for violation of the Private Attorneys General Act (§§ 2698–2699.8) (PAGA), which allows aggrieved employees to file lawsuits to recover civil penalties on behalf of California for Labor Code violations. The parties then stipulated to the dismissal of the causes of action for failure to pay for rest breaks and meal breaks. Plaintiffs moved for class certification, and both parties filed cross-motions for summary judgment as to the remaining causes of action. In December 2021, the district court denied class certification. The district court then denied Plaintiffs' motion for summary judgment in its entirety and granted summary judgment to J.B. Hunt on all causes of action except the cause of action for reimbursement under § 2802 and the UCL and PAGA claims predicated on that cause of action.

In short, the district court found that, contrary to Plaintiffs' assertions, the Driver Pay Plan was lawful and qualified for the safe harbor of § 226.2(a)(7) because it always paid Plaintiffs at least the minimum wage for all hours worked *in addition* to compensating them on a piece-rate basis for certain eligible activities. Therefore, because J.B. Hunt did not pay Plaintiffs only on a piece-rate basis, it did not need to compensate Plaintiffs separately for nonproductive time under § 226.2(a)(4). The district court also found that the Driver Pay Plan did not violate contractual promises to provide particular amounts of compensation for particular tasks because J.B. Hunt made clear that the activity-based bonus amount was calculated by

subtracting hourly pay from total eligible activity pay and was not itself the sum of all eligible piece-rate pay.

The district court also rejected the argument that, regardless of the validity of the Driver Pay Plan, J.B. Hunt was liable for failure to pay all wages for non-driving time because Plaintiffs performed work off-the-clock that was not covered by hourly pay or activity-based pay. The court found that even if such work was occurring, Plaintiffs had not demonstrated that J.B. Hunt knew or should have known that it was occurring, and such knowledge is required to establish liability under California law. The district court thus granted summary judgment to J.B. Hunt as to Plaintiffs' first cause of action.

The district court also granted summary judgment to J.B. Hunt on Plaintiffs' cause of action for failure to issue accurate wage statements in part for similar reasons. The court found that even *if* Plaintiffs had shown that parts of their wage statements were incomplete (and the court largely found that the wage statements were adequate), Plaintiffs had not shown that those violations were knowing and intentional. The district court then granted summary judgment to J.B. Hunt on Plaintiffs' cause of action for waiting time penalties because that claim was derivative of the first cause of action, and the court had already granted summary judgment to J.B. Hunt as to that cause of action.

The district court allowed Plaintiffs' claim for failure to reimburse necessary business expenditures under § 2802 and the derivative UCL and PAGA claims based on the alleged § 2802 violation to proceed to trial, however, finding that a genuine dispute of material fact existed as to whether Plaintiffs' decisions to use their cell phones for work were reasonable under the circumstances. The district court found

that a jury could reasonably rely on Plaintiffs' testimony as to the issues with J.B. Hunt's provided PeopleNet system and their testimony that J.B. Hunt supervisors were aware of and encouraged the use of their cell phones to conclude that Plaintiffs' cell-phone-related expenses were "necessary" and therefore entitled to reimbursement under § 2802.

Prior to trial, the parties filed twelve motions in limine. Among other requests, J.B. Hunt sought to bar Plaintiffs from introducing evidence of cell phone use from non-Plaintiff drivers, while Plaintiffs sought to rely on such evidence. The district court then bifurcated the trial, with the first phrase to be focused on the § 2802 claim and held in front of a jury and the second phase, if necessary, to be focused on the UCL and PAGA claims and to be held in front of the court. The district court subsequently granted J.B. Hunt's motions in limine and denied Plaintiffs' motion regarding whether Plaintiffs could present evidence and argument to the jury that J.B. Hunt was liable for actions or failures related to other drivers, concluding that such arguments should be excluded under both Federal Rule of Evidence 401 and Federal Rule of Evidence 403.

In January 2024, the district court conducted the jury trial on the § 2802 claims. During the trial, the district court did not allow Plaintiffs to present evidence that J.B. Hunt changed its reimbursement policy after Plaintiffs filed their lawsuit. The district court also refused to include several jury instructions proposed by Plaintiffs, include ones purportedly based on *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680 (1946), *superseded by statute on other grounds*, Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251–262, and *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137 (2014). After three days of trial, the jury returned a verdict in favor of J.B. Hunt. And as a result, the

district court also found in favor of J.B. Hunt as to the UCL and PAGA reimbursement claims. On January 25, 2024, the district court entered a final judgment on all of Plaintiffs' claims, dismissed the action with prejudice, and stated that J.B. Hunt shall recover costs. On February 20, 2024, Plaintiffs appealed the final judgment.

Meanwhile, on February 9, 2024, J.B. Hunt submitted its application to the Clerk to tax costs. Plaintiffs objected, primarily arguing that the costs for the depositions were not taxable because the depositions were not used at trial. The Clerk declined to award roughly half of the deposition costs on the grounds that those costs did not fall within the scope of the local rules. Both parties filed motions to retax costs, and the district court denied both motions. On May 6, 2024, Plaintiffs appealed this post-judgment ruling. Our court later consolidated both appeals.

**JURISDICTION AND STANDARD OF REVIEW**

The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1332. Although this case was originally filed in state court, J.B. Hunt removed the matter to federal court under 28 U.S.C. § 1441(a), alleging that the district court had jurisdiction over the action under the Class Action Fairness Act because (1) Plaintiffs are citizens of California, (2) J.B. Hunt is a citizen of Arkansas and Georgia, (3) over five million dollars was at stake based on the allegations in the complaint, and (4) all the other requirements for a class action were met. While the district court ultimately did not certify the proposed class, that decision did not divest the district court of jurisdiction. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1092 (9th Cir. 2010). This court has appellate

jurisdiction over the district court's final judgment and post-judgment ruling under 28 U.S.C. § 1291.

"We review a grant of summary judgment de novo." *Pavoni v. Chrysler Grp., LLC*, 789 F.3d 1095, 1098 (9th Cir. 2015). "We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant law." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (quoting *Ventura Packers, Inc. v. F/V JEANINE KETHLEEN*, 305 F.3d 913, 916 (9th Cir. 2002)).

We review a district court's evidentiary rulings and its formulation of civil jury instructions for abuse of discretion. *See Wilkerson v. Wheeler*, 772 F.3d 834, 838 (9th Cir. 2014). We likewise review a district court's award of costs for abuse of discretion. *Draper v. Rosario*, 836 F.3d 1072, 1087 (9th Cir. 2016). An abuse of discretion occurs "when the district court fails to employ the appropriate legal standards, misapprehends the law, or rests its decision on a clearly erroneous finding of fact." *Smith v. Helzer*, 95 F.4th 1207, 1213–14 (9th Cir. 2024) (cleaned up) (quoting *Zepeda v. INS*, 753 F.2d 719, 724–25 (9th Cir. 1983)).

## ANALYSIS

### I. The Driver Pay Plan qualifies for the safe harbor of § 226.2(a)(7).

Plaintiffs first allege that the district court erred by concluding as a matter of law that J.B. Hunt was protected by § 226.2(a)(7)'s safe harbor provision. Plaintiffs make two arguments to that end. First, they argue that, as applied, the Driver Pay Plan is really a piece-rate scheme that is ineligible for the safe harbor of § 226.2(a)(7) because when

total eligible pay is higher than hourly pay, the formula just pays total eligible activity pay. Second, they argue that because the Driver Pay Plan only pays hourly pay when hourly pay is higher than total eligible activity pay, it constitutes a "minimum wage floor" akin to what was held unlawful in *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 40 (2013). We reject both arguments.

We begin by breaking down Plaintiffs' first argument. As explained above, the Driver Pay Plan consists of two parts: hourly pay at a rate at or above the applicable minimum wage plus—where applicable—an activity-based bonus. In turn, the activity-based bonus is calculated by subtracting hourly pay from total eligible activity pay. As such, the Driver Pay Plan can be represented by the simplified formula stated above:

Hourly Pay + Activity-Based Bonus Amount = Total Compensation

However, as Plaintiffs point out, this formula can also be broken down further into its component pieces, which yields the following formula:

Hourly Pay + (Total Eligible Activity Pay – Hourly Pay) = Total Compensation

Therefore, Plaintiffs point out, the Hourly Pay inputs cancel each other out, and in circumstances where hourly pay is less than total eligible activity pay, the formula simply becomes Total Eligible Activity Pay = Total Compensation.

Plaintiffs use the example of one of Williams's pay checks to emphasize that, under the Driver Pay Plan, a driver could be paid the same amount for different hours of work.

In this pay period, Williams worked 31.78 hours, and his pay was calculated as follows:

- Hourly pay: 31.78333 hours x $14.25 = $452.92
- Total eligible bonus activity: $1,033.04
- Activity-based bonus: $1,033.04 – $452.92 = $580.12
- Total pay: $452.92 + $580.12 = $1,033.04 (plus $25.34 for rest breaks)

J.B. Hunt's corporate witness confirmed that, outside of a difference in rest-break pay, Williams would have been paid the same if he had worked forty hours instead of 31.78 hours. The calculations based on forty hours of work, with the same amount of eligible bonus activity, would be as follows:

- Hourly pay: 40 hours x $14.25 = $570
- Total eligible bonus activity: $1,033.04
- Activity-based bonus: $1,033.04 – $570 = $463.04
- Total pay: $570 + $463.04 = $1033.04 (plus slightly different rest break pay)

Therefore, according to Plaintiffs, "unlike true hourly pay plus a bonus, it is not the case that the more hours J.B. Hunt's drivers work, the more they get paid." As such, they contend, the Driver Pay Plan is really a piece-rate scheme improperly masquerading as a hybrid scheme, and J.B. Hunt is ineligible for the safe harbor of § 226.2(a)(7). And if J.B. Hunt is ineligible for this safe harbor, then Plaintiffs have shown a genuine issue of material fact as to whether J.B.

Hunt failed to separately compensate them for "other nonproductive time" as required by § 226.2(a)(4).

While we agree with Plaintiffs that J.B. Hunt's compensation scheme can fairly be described as "convoluted," we ultimately disagree with them that this scheme does not qualify for the safe harbor of § 226.2(a)(7).[2] Although Plaintiffs frame the Driver Pay Plan as "simply a piece-rate compensation scheme that fails to separately pay for all hours worked," that framing mischaracterizes the actual functioning of the Driver Pay Plan.  Rather, the scheme *initially* pays for all hours worked and then adds any applicable bonus compensation on top of that hourly pay. Nothing in § 226.2 prohibits an employer from paying an hourly wage of at least the minimum wage and then adding bonus pay based on a formula that considers hours worked. Indeed, all that § 226.2(a)(7) requires is that an employer "pays an hourly rate of at least the applicable minimum wage for all hours worked" in addition to paying any piece-rate compensation.  Cal. Lab. Code § 226.2(a)(7).

That is exactly what happened here.  J.B. Hunt paid its employees an hourly wage for "all hours worked," whether or not those hours were "productive" or "nonproductive."  It then supplemented that pay—when employees were eligible—with a piece-rate-based bonus.  And J.B. Hunt did not promise that its additional compensation would be pure piece-rate pay.  Rather, it explained to drivers that the bonus pay would be calculated by subtracting hourly pay from eligible bonus activities, and that only this difference would be added onto the base hourly pay.  Therefore, J.B. Hunt has satisfied its obligation to "pay no less than the minimum

---

[2] It is undisputed that the J.B. Hunt's hourly rate was always at or above the applicable minimum wage during the relevant time period.

wage for all hours worked" while "still keeping any promises it has made to provide particular amounts of compensation for particular tasks or periods of work." *Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762, 782 (2020). That this scheme is "relatively unusual" does not mean that it is inherently unlawful. *Id.* at 789.

Indeed, although this scheme may be odd, J.B. Hunt's driver guidelines stated that the goal of the scheme was to reward efficiency and productivity. We can see good reason why J.B. Hunt would consider this formula a means to that end: because an employee could either earn the same pay for fewer hours worked or earn more money by completing more tasks in the same number of hours, the employee would be incentivized to work more efficiently. Similarly, an employee would be disincentivized from dawdling because taking too long to complete tasks might mean no activity bonus added to hourly pay. Ultimately, "[t]he minimum wage laws exist to ensure that workers receive adequate and fair pay, not to dictate to employers and employees what pay formulas they may, or may not, agree to adopt as a means to that end." *Id.* Forbidding J.B. Hunt from offering greater pay based on employee efficiency would "do nothing to ensure workers are paid fair or adequate wages for all hours worked." *Id.* at 787.

We also reject Plaintiffs' argument that, by just paying drivers their hourly pay when the Driver Pay Plan formula results in a negative number, J.B. Hunt has impermissibly created a "minimum wage floor" akin to what the California Court of Appeal held unlawful in *Gonzalez*, 215 Cal. App. 4th at 40–41. In *Gonzalez*, a car dealership paid its technicians on a piece-rate basis for repair work. *Id.* at 40. When their piece-rate pay averaged over hours worked fell below the minimum wage, the dealership supplemented their

income so that the technicians were always paid at least a minimum wage (the so-called "minimum wage floor"). *Id.* The California Court of Appeal struck down this system, holding that the technicians were entitled to hourly compensation for non-productive time separate from any piece-rate pay. *Id.* at 40–41. The California Supreme Court later confirmed that *Gonzalez*'s "no borrowing" rule (that is, an employer cannot "borrow" compensation from one set of hours or tasks to rectify compensation below the minimum wage for a different set of tasks) was codified by § 226.2. *See Oman*, 9 Cal. 5th at 788 n.8; *see id.* at 789 (Liu, J., concurring).

We find *Gonzalez* inapplicable here. What *Gonzalez* and its progeny hold is that employers cannot "tak[e] compensation contractually due for one set of hours and spread[] it over other, otherwise un- or undercompensated, hours to satisfy the minimum wage." *Oman*, 9 Cal. 5th at 779. The concern with wage borrowing is that such a practice "reduc[es] compensation, for the hours from which wages were borrowed, below the contractually agreed-upon level." *Id.* at 780; *see also Gonzalez*, 215 Cal. App. 4th at 48–50. Indeed, the issue in *Gonzalez* was that the dealership had promised to pay a certain rate for tasks completed, and the minimum wage floor "did not alter the nature of that promise," meaning the dealership was reneging on its contractual commitment when it "borrowed" from piece-rate pay to meet minimum wage requirements. *Oman*, 9 Cal. 5th at 788.

No such borrowing occurred here. J.B. Hunt never took from piece-rate pay to supplement hourly pay the way the car dealership did in *Gonzalez*. Rather, as detailed above, J.B. Hunt always paid hourly wages, and then paid any piece-rate-based bonus pay on top of that pay. The hourly

pay never changed: only the bonus pay did.  In other words, there was no "minimum wage floor" because J.B. Hunt was not borrowing from piece-rate pay to meet minimum wage obligations, but rather—as it clearly explained to drivers in its guidelines—calculating bonus pay based in part on hours worked.  *See Oman*, 9 Cal. 5th at 791 (Liu, J., concurring) ("Correctly identifying an employer's contractual commitment is critical to ensuring that employers do not circumvent the no-borrowing rule simply by inserting into employment agreements a minimum wage floor—i.e., an agreement to make up the difference if an employee's promised pay, averaged over all hours worked, falls below the applicable minimum wage.").  Nothing in California's caselaw or our own prevents an employer from creating a contract that alters bonus pay based on hours worked, so long as the hourly pay does not borrow from promised piece-rate pay to create a minimum wage floor.

To that end, as the district court recognized, J.B. Hunt's scheme complies with the general guidelines for complicated compensation schemes articulated in *Oman*. Because we find that J.B. Hunt did not improperly insert a "minimum wage floor . . . into a contract that otherwise promised to pay by the piece," *Oman*, 9 Cal. 5th at 788, Plaintiffs' reliance on footnote 8 of *Oman* is inapposite. Instead, as *Oman* articulates, to determine whether a compensation scheme is proper, we ask (1) whether, for each task or period covered by the contract, the employee is paid at or above the minimum wage, and (2) whether there are other tasks or periods not covered by the contract for which at least the minimum wage should have been paid.  *Id.* at 782.  As the district court recognized, the answer to the first question is yes, because J.B. Hunt always paid Plaintiffs at least a minimum wage for all hours worked, and the answer

to the second question is no, because there are no tasks or periods not covered by the contract for which J.B. Hunt should have owed compensation.  Additionally, J.B. Hunt never promised to pay exact amounts as piece-rate compensation, but articulated that total eligible activity pay would be just one factor that went into a potential activity bonus.  As such, J.B. Hunt's pay scheme "satisfies state minimum wage law without ever needing to compromise its contractual commitments." *Id*. at 788.  It therefore complies with *Oman*'s general principles for evaluating compensation schemes.

Accordingly, because J.B. Hunt is entitled to § 226.2(a)(7)'s safe harbor, its compensation scheme does not violate the no-borrowing principles articulated by *Gonzalez*, and it otherwise complies with *Oman*'s general guidelines, the district court did not err by granting summary judgment to J.B. Hunt as to Plaintiffs' first cause of action for unpaid wages to the extent that this cause of action was based on the purported unlawfulness of the Driver Pay Plan.

## II. Plaintiffs have not shown a genuine dispute of material fact as to whether J.B. Hunt is otherwise liable for failing to pay Plaintiffs for off-the-clock work.

Plaintiffs also argue that, regardless, genuine issues of material fact remain as to whether J.B. Hunt is nonetheless liable for failing to pay Plaintiffs for off-the-clock work that occurred pre- or post-shift and that was not captured by the PeopleNet units that track driver time throughout the day. That is, Plaintiffs argue that even *if* the Driver Pay Plan were lawful, the district court erred by granting summary judgment to J.B. Hunt as to their first cause of action because they demonstrated genuine issues of material fact as to

whether J.B. Hunt still failed to pay them for all the work they completed.

Under California law, "[a] plaintiff may establish liability for an off-the-clock claim by proving that (1) he performed work for which he did not receive compensation; (2) that defendants knew or should have known that plaintiff did so; but that (3) the defendants stood idly by." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 548 (E.D. Cal. 2010)).  When employees are clocked out, there is a presumption that they are not working.  *See Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1051 (2012). The plaintiff bears the burden of rebutting that presumption. *Id.*

In the proceedings below, the district court found that a genuine dispute of material fact existed as to the first element because Plaintiffs testified that they performed pre- and post-trip duties before logging in (or out) of the PeopleNet units in their trucks.  The district court determined that based on this testimony, a jury could reasonably conclude that Plaintiffs each performed some work off the clock, despite J.B. Hunt's policies instructing drivers to log all their hours. Because such pre-trip duties did not qualify for activity-based pay, Plaintiffs would not have been compensated either via hourly pay or bonus pay for this work.

The district court nonetheless granted summary judgment in favor of J.B. Hunt on this claim because Plaintiffs failed to raise a genuine dispute of material fact as to the second element: whether J.B. Hunt knew or should have known that Plaintiffs were performing such off-the-clock work.  The district court found that Plaintiffs had conceded this issue by failing to address it in their motion

for summary judgment and then failing to respond to J.B. Hunt's arguments as to this element in its opposition brief. The district court then found that, in any event, the record did not support a finding that J.B. Hunt knew or should have known that Plaintiffs performed off-the-clock work.

Even if Plaintiffs had not conceded this issue, we agree with the district court that Plaintiffs' claims fail on the merits. On appeal, Plaintiffs merely point out that Williams testified that J.B. Hunt wanted its drivers to arrive forty-five minutes before their shift and that Williams and Cline used to wait at the office with "other guys" for paperwork before their shifts. Plaintiffs also point out that the PeopleNet unit necessarily would not capture pre-shift or post-shift work that occurred before the drivers got into their trucks and that J.B. Hunt's driver manual emphasized that it was "critical" that employees log in and out of PeopleNet at the beginning and end of their shifts. In Plaintiffs' view, this evidence is more than sufficient to create a genuine dispute of material fact as to whether J.B. Hunt knew or should have known that off-the-clock work was occurring.

We disagree. As J.B. Hunt notes, Williams did not testify that J.B. Hunt wanted him to arrive forty-five minutes before his shift, but rather forty-five minutes before *departure*. Had Williams logged in at the beginning of the shift, he would have been paid for those hours. And while Cline testified that after she picked up her paperwork, she would wait in the office with "other guys" including Williams, there is nothing in her testimony demonstrating that a supervisor knew or should have known that she had not clocked in during that time. As Plaintiffs even acknowledge, J.B. Hunt required Plaintiffs to log on to their PeopleNet units at the beginning and end of their shifts to ensure accurate hours. Plaintiffs' bare-bones testimony and

speculative assertions do not demonstrate a genuine issue of material fact as to whether J.B. Hunt knew or should have known that Plaintiffs were not following its clear instructions. *See Angle v. Miller*, 673 F.3d 1122, 1134 n.6 (9th Cir. 2012).

Moreover, Plaintiffs have provided no evidence that supervisors at J.B. Hunt monitored their hours. We agree with authority suggesting that, had Plaintiffs shown that J.B. Hunt closely tracked their hours, they might have demonstrated a genuine issue of material fact as to whether J.B. Hunt knew or should have known that such off-the-clock work was occurring. *See, e.g.*, *Reloj v. Gov't Emps. Ins. Co.*, No. 21-CV-1751-L, 2023 WL 6370901, at *3 (S.D. Cal. Sept. 11, 2023); *Castillo v. Bank of Am. Nat'l Ass'n*, No. 17-CV-0580-DOC, 2019 WL 7166055, at *5 (C.D. Cal. Oct. 29, 2019). However, Plaintiffs have identified no similar kind of evidence demonstrating that J.B. Hunt was paying close attention to employee compliance with their timekeeping policies. Plaintiffs' speculation that J.B. Hunt *could* have compared PeopleNet log-in/log-out times with Plaintiffs' overall time spent working is insufficient to demonstrate that J.B. Hunt *should* have known that such off-the-clock work was occurring. *See Jong v. Kaiser Found. Health Plan, Inc.*, 226 Cal. App. 4th 391, 398–99 (2014).

Ultimately, while the summary judgment standard requires us to view the evidence in the light most favorable to the moving party, it does not require us to ignore deficiencies in the record. The standard under California law is whether the defendant *knew or should have known* that a plaintiff performed off-the-clock work, not whether a defendant *could* have known that such work was occurring. *Jimenez*, 765 F.3d at 1165. Plaintiffs have potentially raised a genuine issue of material fact as to the latter but not the

former.  Therefore, the district court did not err by granting
summary judgment to J.B. Hunt on Plaintiffs' first cause of
action to the extent it was based on their claim that they
performed off-the-clock work.

### III. The district court did not err by granting summary judgment in favor of J.B. Hunt on Plaintiffs' itemized wage statement claims.

Plaintiffs next argue that the district court erred by
granting summary to J.B. Hunt as to their non-PAGA and
PAGA wage statement claims.  Under § 226(a), an employer
must include information such as gross wages earned, total
hours worked, and (if applicable) the number of piece-rate
units and the relevant piece-rate in an "accurate itemized
statement" of wages.  Cal. Lab. Code § 226(a).  An
employee who has been injured by a violation of § 226(a)
can recover damages under § 226(e).  *Id.* § 226(e).  The
district court granted summary judgment to J.B. Hunt as to
both the § 226(e) claim (the non-PAGA claim) as well as the
PAGA claim based on the purported violation of § 226(a).**[3]**

As Plaintiffs belatedly realize on appeal, § 226(e) and
PAGA have different requirements.  To prevail on an
individual § 226(e) claim, a plaintiff must show (1) a
violation of § 226(a), (2) that was "knowing and

---

[3] Plaintiffs also contend that the wage statements violated
§ 226.2(a)(2)(B) by failing to separately list productive and
nonproductive time.  The district court rejected this argument on the
grounds that, because J.B. Hunt qualified for the safe harbor of
§ 226.2(a)(7), it did not need to comply with the requirements articulated
in § 226.2(a)(2)(B).  Because we agree that J.B. Hunt qualifies for the
safe harbor of § 226.2(a)(7), we likewise reject Plaintiffs' arguments on
appeal that J.B. Hunt committed derivative violations of
§ 226.2(a)(2)(B).  We therefore do not address Plaintiffs'
§ 226.2(a)(2)(B) arguments any further.

intential," and (3) that caused a resulting injury. *Id.* Meanwhile, to prevail on a PAGA claim based on § 226(a), a plaintiff need only show a violation of § 226(a) without having to satisfy the additional knowledge and injury requirements for a claim made under § 226(e). *See Lopez v. Friant & Assocs.*, 15 Cal. App. 5th 773, 788 (2017). Before the district court, however, Plaintiffs consistently argued that their PAGA claims relied on the "same reasons" for establishing liability as their non-PAGA claims. Therefore, we reject at the outset Plaintiffs' argument that the district court erred by applying the "knowing and intentional" requirement to both their PAGA and non-PAGA claims. *See Hunter v. U.S. Dep't of Educ.*, 115 F.4th 955, 963–64 (9th Cir. 2024). Plaintiffs invited this error, so they cannot complain on appeal that the district court should not have followed their own framing. *See id.* ("[A] party may not complain on review of errors below for which he is responsible." (quoting *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002))).

Moving on to the alleged § 226(a) violations, we agree with the district court that Plaintiffs have raised a genuine dispute of material fact as to whether their wage statements were inaccurate to the extent that these statements did not accurately state Plaintiffs' total hours worked. As detailed above, Plaintiffs each testified that they performed uncompensated work that was not reflected in either hourly pay or activity-based pay. However, for the same reasons detailed above, Plaintiffs' claims on this ground fall at the second hurdle: they cannot show that any wage statement violations as to total hours worked were "knowing and intentional." Accordingly, the district court did not err by granting summary judgment to J.B. Hunt as to the part of this

cause of action premised on inaccurate recording of total hours worked.

Additionally, we reject Plaintiffs' argument that the district court erred by failing to recognize that § 226 requires that an employer must provide details as to piece-rate units earned and applicable piece-rates in the wage statement itself as opposed to a separate document. On appeal, Plaintiffs argue that while J.B. Hunt provided this information in another document, it did not do so in the one-page paystub that Plaintiffs actually received, which violated the statute. In turn, J.B. Hunt argues that this information was included as part of Plaintiffs' *multi-page* wage statements, and that Plaintiffs' inclusion of just one page of these statements in their brief is misleading. On appeal, Plaintiffs fault the district court for taking "too narrow a view of what is required under the statute" when it failed to address this issue and instead merely concluded that J.B. Hunt's wage statements were not incomplete simply because they did not include the specific date on which each piece-rate unit was earned.

However, the district court only took this narrower view of the issue because Plaintiffs failed to properly raise the broader arguments they now make on appeal. Before the district court, Plaintiffs did not clearly argue that J.B. Hunt erred by including information as to piece-rate units and piece-rate only in an (allegedly) separate document, but rather that this other document "d[id] not indicate which day the stops and miles were made," which would "make it nearly impossible to determine if [Plaintiffs] are being paid properly for any given workday." *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) ("[A]n issue will generally be deemed waived on appeal if the argument was not 'raised sufficiently for the

trial court to rule on it.'" (quoting *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992))).  To the extent that the parties now dispute whether the wage statements Plaintiffs received were a one-page document that did not include this information or a multi-page document that did, that ambiguity is a function of the insufficient arguments that Plaintiffs made before the district court.  Therefore, we do not reach the merits, and do not wade into the parties' disagreement as to whether any good faith defense applies.

## IV. The district court did not err by entering judgment in favor of J.B. Hunt on Plaintiffs' reimbursement claims following trial.

We now turn to the trial portion of the case.  As detailed above, the district court granted summary judgment to J.B. Hunt on all of Plaintiffs' claims except the claim for failure to reimburse necessary business expenses under § 2802 and the derivative UCL and PAGA reimbursement claims.  Under § 2802, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties[.]"  Cal. Lab. Code § 2802(a).  "Necessary expenditures" includes "all reasonable costs," including attorney's fees.  *Id.* § 2802(c).

The district court bifurcated the trial into two proceedings, dividing it into a jury trial for the § 2802 claim followed by (if necessary) a bench trial on the UCL and PAGA claims.  Because the jury found in favor of J.B. Hunt as to the § 2802 claims, the district court found in favor of J.B. Hunt on the related UCL and PAGA claims without holding a trial as to that portion.  On appeal, Plaintiffs argue that the district court made a variety of errors, each of which

warrants reversal.  We disagree.  We take each argument in turn.

## A. The district court did not abuse its discretion by improperly limiting evidence, testimony, and argument to Plaintiffs' individual claims.

Plaintiffs first argue that the district court abused its discretion by barring any evidence, testimony, or argument related to their representative PAGA and UCL claims during the jury trial portion of the proceedings.  Prior to trial, the district court had excluded evidence about other drivers' use of their cell phones both on the grounds that such evidence was irrelevant and that it would create a significant danger of unfair prejudice, confusing the issues, and misleading the jury.  On appeal, Plaintiffs contend that the evidence was relevant because whether their cell phone use was reasonable is informed by what other drivers were doing pursuant to J.B. Hunt's policies and that the district court should not have alternatively excluded the evidence under Rule 403.

We need not decide whether this evidence was relevant because Plaintiffs have not carried their burden of showing that the district court abused its discretion by excluding the evidence under Rule 403.  *See Sidibe v. Sutter Health*, 103 F.4th 675, 691–92 (9th Cir. 2024).  First, contrary to Plaintiffs' assertions, the district court did not inherently abuse its discretion by failing to extensively explain its decision to exclude evidence under Rule 403.[4]  Second, it

---

[4] Rather, our standard is that "[w]e must affirm if the record, as a whole, indicates that the court properly balanced the evidence." *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992); *see also Sidibe v. Sutter Health*, 103 F.4th 675, 703 (9th Cir. 2024) (concluding that "[v]iewing the evidence as a whole, it is apparent that the district court abused its discretion" in its blanket exclusion of certain evidence).  Here, the

was not otherwise "illogical," "implausible," or "without support in inferences that may be drawn from the facts in the record" for the district court to have concluded that the probative value of the evidence was substantially outweighed by unfair prejudice, confusing the issues, and misleading the jury. *See United States v. Espinoza*, 880 F.3d 506, 511 (9th Cir. 2018). The only issue before the jury was whether J.B. Hunt failed to pay each *individual* Plaintiff for personal cell phone use. It was not illogical for the district court to determine that allowing evidence of J.B. Hunt's potential liability as to *other* drivers would have confused the jury as to the precise issue it needed to decide. Ultimately, "Rule 403 determinations are 'subject to great deference,'" *United States v. Cabrera*, 83 F.4th 729, 736 (9th Cir. 2023) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1267 (9th Cir. 2009) (en banc)), and Plaintiffs' passing assertion that the district court abused its discretion has not shown that this is one of the "rare" cases requiring reversal, *United States v. Johnson*, 89 F.4th 997, 1003 n.1 (7th Cir. 2024).

### B. The district court did not abuse its discretion by excluding evidence that J.B. Hunt changed its reimbursement policy.

Next, we conclude that the district court did not abuse its discretion by refusing to allow evidence that, after this lawsuit was filed, J.B. Hunt changed its reimbursement policy to provide a stipend to drivers for their cell phones. Under Rule 407, evidence of subsequent remedial measures is not admissible to prove culpable conduct. Fed. R. Evid.

---

district court's order shows that it reviewed the relevant motions in limine and then briefly, but explicitly, balanced the Rule 403 factors. Nothing more was required.

407. Plaintiffs argue, however, that evidence of this change in policy should have been admitted under Rule 407's exception for demonstrating "the feasibility of precautionary measures." *Id.*

Critically, although Plaintiffs claim they are making a feasibility argument, they do not actually challenge whether it was "feasible" for J.B. Hunt to allow drivers to use their personal cellphones or to reimburse them for such use. Rather, in their own words, they seek to introduce this evidence to prove that they were *required* to use their cell phones at work. That is, Plaintiffs want to use the evidence of J.B. Hunt's change in policy to prove the allegedly culpable conduct at the heart of their § 2802 claim. Rule 407 squarely bars this proposed use, and there was no need—as Plaintiffs now allege—for the district court to have instead admitted this evidence but coupled it with a limiting instruction.

### C. The district court did not abuse its discretion by failing to provide adequate jury instructions.

Plaintiffs also argue that the district court abused its discretion by failing to provide adequate jury instructions during trial. Plaintiffs make two arguments: first, that the district court should have instructed the jury on the burden-shifting approach set forth in *Mount Clemens*, and second, that the district court should have instructed the jury on the de minimis exception under *Cochran*. We reject both arguments.

As to the *Mount Clemens* argument, Plaintiffs are upset that J.B. Hunt pointed out at trial that Plaintiffs' cell phone records showed many personal calls but few work-related calls and that J.B. Hunt argued to the jury that it could assume that Plaintiffs' failure to produce certain cell phone

records meant that those records would not have supported their claims.  Plaintiffs claim that, under *Mount Clemens*, they were entitled to an instruction that would have "allowed the jury to understand that any lack of records could not properly be held against Plaintiffs."

Even setting aside the disputed issue of waiver, this argument fails on the merits.  Under *Mount Clemens*, if an employee alleges improper compensation, he must show that he has performed work for which he was improperly compensated and produce evidence to show the extent of that work as a matter of reasonable inference.  *Mount Clemens*, 328 U.S. at 687.  If he does so, the burden shifts to the employer to produce "evidence of the precise amount of work performed or . . . evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id* at 687–688.  If the employer fails to produce such evidence, "the court may then award damages to the employee, even though the result be only approximate."  *Id.* at 688.  *Mount Clemens* does not generally hold that when an employee alleges that they have incurred expenses that were not explicitly mandatory, an employer cannot point out deficiencies in the employee's records when challenging whether those expenses were necessary.  Accordingly, even if Plaintiffs had properly proposed the instruction below that they now argue for on appeal,[5] it should not have been included.  *See Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996) ("Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading.").

---

[5] Neither *Mount Clemens*-based jury instruction that Plaintiffs proposed below reflects the instruction that they now request on appeal.

Meanwhile, as to their *Cochran* argument, Plaintiffs assert that the district court abused its discretion by failing to instruct the jury that "they should recover a reasonable percentage of their entire personal cell phone expenses regardless of whether the actual expense they incurred was de minimis." *Cochran* holds that where cell phone use is mandatory, the employer "must pay some reasonable percentage of the employee's cell phone bill" even if the employee would not have incurred an extra expense absent the job—for example, where the employee already has a plan with unlimited minutes. 228 Cal. App. 4th at 1140, 1144. However, again setting aside the issue of waiver,[6] the district court did not abuse its discretion because Plaintiffs again misstate the legal standard. As formulated in their opening brief, Plaintiffs appear to ask for an instruction that would require J.B. Hunt to pay for a reasonable percentage of Plaintiffs' cell phone expenses *regardless* of whether those expenses were mandatory. We agree with J.B. Hunt that the district court did not abuse its discretion by failing to include this incomplete and inaccurate instruction, especially where the district court correctly instructed the jury as to the elements required for Plaintiffs to establish a claim under § 2802.[7]

---

[6] Before the district court, Plaintiffs proposed two *Cochran*-based instructions. On appeal, they do not identify which of the two proposed instructions is at issue, and neither proposed instruction cleanly maps onto the instruction Plaintiffs now argue for on appeal.

[7] The district court instructed the jury that to establish a § 2802 claim, Plaintiffs must prove (1) that they incurred expenditures in direct consequence of the discharge of their job duties for J.B. Hunt; (2) that the expenditures were reasonable and necessary; (3) that J.B. Hunt failed to reimburse Plaintiffs the full amount of the expenditures; and (4) the amount of the expenditures that J.B. Hunt failed to reimburse Plaintiffs.

## V. The district court did not abuse its discretion by awarding costs to J.B. Hunt.

Plaintiffs also appeal the district court's separate post-judgment order awarding J.B. Hunt costs of $14,381.08 following the district court's denial of the parties' cross-motions to retax. Plaintiffs argue that the district court abused its discretion when it taxed over $7,300 in deposition costs not "necessarily obtained for use in the case" and when it awarded "travel costs" of $525.66 for corporate witness Sherry Moncrief (Moncrief) to fly from Arkansas to Los Angeles to testify at trial. Once again, we reject both arguments.

Rule 54 provides that, in general, costs should be awarded to the prevailing party in a civil action. Fed. R. Civ. P. 54(d)(1). In turn, costs are defined in 28 U.S.C. § 1920, which provides that "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case" as well as copies of any materials "necessarily obtained for use in the case" are taxable. 28 U.S.C. § 1920(2), (4). Both the Central District of California's Local Rules and this court consider reasonable deposition costs to fall within the scope of 28 U.S.C. § 1920. *See* C.D. Cal. R. 54-3.5; *Alflex Corp. v. Underwriters Lab'ys, Inc.*, 914 F.2d 175, 177, 176 n. 3 (9th Cir. 1990) (per curiam); *see also Evanow v. M/V Neptune*, 163 F.3d 1108, 1118 (9th Cir. 1998).

Plaintiffs primarily argue that the district court should have excluded the costs of all the depositions taken in the case because none of the depositions were used at trial. However, we have held that documents do not need to be

---

*See* Cal. Lab. Code § 2802; *see also* Jud. Council of Cal. Civ. Jury Instr. 2750.

offered as evidence for them to be "necessarily obtained for use in the case" within the meaning of § 1920. *See Haagen-Dazs Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc.*, 920 F.2d 587, 588 (9th Cir. 1990) (per curiam) (holding that the district court did not abuse its discretion by awarding copying costs for documents necessarily obtained for use in the case but not offered as evidence). Rather, while a district court maintains *discretion* to deny costs for that reason, it does not *need* to do so. *See EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 683 (9th Cir. 1997); *see also* C.D. Cal. R. 54-3.5(a).

Here, the district court explained that all the depositions were reasonably necessary for trial preparation, given that all the people deposed testified at trial and several were cross-examined about their testimony for impeachment purposes. Additionally, the district court pointed out the deposition testimony was repeatedly used in the parties' filings on class certification and summary judgment. Under those circumstances, the district court found that the depositions were not "unnecessary" just because they were not introduced at trial. These are all valid reasons for determining that the depositions were "necessarily obtained for use in the case" within the meaning of § 1920. As such, given the trial court's "intimate familiarity" with the proceedings and its justifiable reasons for finding the depositions necessary, we conclude that the district court did not abuse its discretion by taxing the deposition costs. *Pape Lift, Inc.*, 115 F.3d at 683 (quoting *Smith v. Hughes Aircraft Co.*, 22 F.3d 1432, 1439 (9th Cir. 1993)).[8]

---

[8] Plaintiffs also argue in passing that it would be "unjust" to award these costs. However, Plaintiffs waived this argument both by failing to

Plaintiffs also argue—for the first time on appeal—that the district court abused its discretion by awarding full travel costs for Moncrief to travel from Arkansas to Los Angeles. In their view, because Moncrief resided outside the district, her mileage allowance should have only covered up to 100 miles at most. *See Kemart Corp. v. Printing Arts Rsch. Lab'ys, Inc.*, 232 F.2d 897, 904 (9th Cir. 1956). However, once again setting aside the issue of waiver, this argument is meritless. Both the current version of 28 U.S.C. § 1821 and the relevant Local Rules plainly allow a district court to tax full mileage and other associated travel expenses. *See* 28 U.S.C. § 1821(c)(1); C.D. Cal. R. 54-3.6. As such, the district court did not abuse its discretion by awarding full costs for Moncrief's travel.

**AFFIRMED.**

---

properly present it to the district court and by failing to properly develop it before this court.